IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH A FACEBOOK ACCOUNT THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 24-MJ-498 |

**AFFIDAVIT IN SUPPORT OF**
**APPLICATIONS FOR SEARCH WARRANTS**

I, Adam Cook, being duly sworn under oath and deposed, state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with the below-listed Facebook account that is stored at premises owned,

maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered

in Menlo Park, California.  The information to be searched is described in the following

paragraphs and in Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to

disclose to the government records and other information in its possession, pertaining to the

subscriber or customer associated with the account.  The following Facebook account is the

subject of the warrants:

> a.  Facebook identification number 100094100089167, and/or account name
>
> Mhizz Hill, believed to be used by Matthew HILL ("SUBJECT
>
> ACCOUNT).

2.      I am a Special Agent with the FBI and have been so employed since December

2017.  I am currently assigned to the Violent Crimes Task Force (VCTF) which investigates

violations of federal law, including carjackings, robberies of banks, robberies of businesses that

affect interstate commerce (also known as Hobbs Act robberies), and kidnappings. Furthermore, I have received training and experience as a police officer with the FBI Police for approximately four years prior to my current position as a Special Agent.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, including Philadelphia Police Department personnel.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2119 (carjacking) and § 922(g) (unlawful possession of a firearm by a felon) have been committed by Matthew HILL. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**<u>PROBABLE CAUSE</u>**

5.      On August 8, 2023 and September 18, 2023, Matthew HILL committed two carjackings in Philadelphia, PA by contacting his victims who were attempting to sell their cars via Facebook Marketplace.  HILL used a Facebook account with the name of "Mhizz Hill" to communicate with his victims.  When HILL met the victims to see the vehicles, HILL produced a handgun and carjacked the vehicles.

6.      On August 8, 2023, at approximately 1:14 PM, Philadelphia Police Department (PPD) Officers responded to 3300 S 61st Street, Philadelphia, PA for a reported carjacking.

VICTIM 1[1] reported that he was attempting to sell a 2013 Chevrolet Impala that belonged to his business through Facebook Marketplace. This vehicle was taken from him at gunpoint by an individual later identified as Matthew HILL.

7.      Prior to the meeting, VICTIM 1 corresponded through Facebook Marketplace with an account that used the name of "Mhizz Hill" in order to sell the Chevrolet Impala. VICTIM 1 set up a meeting with HILL on August 8, 2023, and HILL arrived at 3300 S 61st Street to see the Chevrolet Impala before purchasing it. When HILL arrived at the location, VICTIM 1 told HILL that the car was stored at another location: a car lot at 6221 W Passyunk Ave, Philadelphia, PA. HILL, VICTIM 1 and WITNESS 1[2] then went to 6221 W Passyunk Ave, Philadelphia, PA to see the car. After they arrived, HILL asked VICTIM 1 if he could take the car for a test drive and VICTIM 1 agreed. HILL got into the driver seat of the car and VICTIM 1 went with WITNESS 1 to open the gate to the car lot so that HILL could begin the test drive. As HILL drove toward them, he produced a black handgun and pointed it at VICTIM 1 and WITNESS 1. HILL told VICTIM 1 and WITNESS 1 not to follow him. HILL then fled the area in the carjacked Chevrolet Impala.

8.      VICTIM 1 provided PPD Detectives with information concerning the Facebook Marketplace account for "Mhizz Hill," which displayed a profile picture of the individual who met with VICTIM 1 and committed the carjacking. Detectives identified the individual in the account as MATTHEW HILL, which appeared to be the same individual in Pennsylvania Driver's License Database photos.

9.      PPD Detectives prepared and showed a photo array that included a photo of HILL

---

[1] Victim 1's identity is known to law enforcement but is being withheld for his safety.
[2] Witness 1's identity is known to law enforcement but is being withheld for his safety.

to VICTIM 1; VICTIM 1 positively identified the photo of HILL as the individual that carjacked him.

10.     On September 18, 2023, HILL committed another carjacking of a 2006 Dodge Durango from VICTIM 2[3] in the area of 1050 E Hunting Park Ave, Philadelphia, PA.  On this date, VICTIM 2 met with HILL to sell VICTIM 2's Dodge Durango.  VICTIM 2 set up the meeting through Facebook Marketplace with an account with the name of "Mhizz Hill."  When VICTIM 2 met with HILL to show the car, HILL requested a test drive of the car.  VICTIM 2 agreed to the test drive and got into the passenger seat of the car; HILL got into the driver's seat.  At this time, HILL took out a black handgun and pointed it at VICTIM 2 and ordered VICTIM 2 out of the car. HILL then fled the area in the carjacked Durango.

11.     PPD Detectives identified the common carjacking pattern and identified HILL as the subject in the second carjacking of the Dodge Durango.  PPD Detectives prepared and showed a photo array to VICTIM 2 which contained HILL's photo.  VICTIM 2 positively identified HILL as the individual that committed the carjacking of the Dodge Durango.

12.     PPD Detectives obtained arrest warrants for carjacking and related charges for both carjackings.

13.     On September 26, 2023, a PPD Officer observed the carjacked white Dodge Durango parked in the area of 1799 W Juniata Street, Philadelphia, PA; the PPD Officer knew of this carjacked Dodge Durango due to a Patrol Alert that had been issued within the PPD.  The PPD Officer observed HILL enter the driver seat of the Durango and drive off.  Aware of the recent carjacking of the white Dodge Durango and the license plate on the Durango not matching a

---

[3] Victim 2's identity is known to law enforcement but is being withheld for his safety.

registration for a Dodge Durango, the PPD Officer conducted a traffic stop of the Dodge Durango. The PPD Officer then confirmed HILL's identify and the VIN of the carjacked Dodge Durango. HILL was arrested at this time and transported to PPD East Detectives. An Apple iPhone was recovered in HILL's possession at the time of his arrest.

14.     On September 26, 2023, PPD Detectives conducted a search of the Dodge Durango and recovered a black Polymer P-80 9 mm firearm in the vehicle.

15.     After HILL was arrested for his active warrants, HILL was interviewed by PPD Detectives.  HILL confirmed that his Facebook account used the name of "Mhizz."  HILL stated that he bought the Dodge Durango from a guy that he met on Facebook Marketplace.  HILL denied stealing or carjacking any cars.  HILL stated that he previously bought other cars on Facebook Marketplace, but HILL was not specifically asked about the car from the first carjacking in the interview.

16.     PPD Detectives obtained cell phone records for HILL's phone, 267-357-6642. Analysis of his cell phone records showed that his cell phone was in the area of the Impala carjacking on August 8, 2023 from approximately 12:18 PM to 1:06 PM. For the Durango carjacking on September 18, 2023, the phone was in the area of that carjacking from approximately 7:05 PM to 7:33 PM.

17.     Based on my review of court records, HILL has at least two prior felony convictions.  Included in those court records were documents signed by HILL in which he acknowledged that the crimes to which he was pleading guilty were punishable by more than one year in prison.

## BACKGROUND REGARDING FACEBOOK/META[4]

18.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each Facebook user is assigned a user identification number and can choose a username.

20.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a

---

[4] The information in this section is based on my training and experience, and on information published by Meta on its Facebook website, including but not limited to, the following webpages: https://www.facebook.com/privacy/policy ("Privacy Policy"); https://www.facebook.com/about/basics/manage-your-privacy/location ("Location"); https://www.facebook.com/help/278928889350358 ("How Location Settings Work"); and https://www.facebook.com/help ("Help Center").

Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video, and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

24.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. of the date of each call.  Facebook users can also post comments on the Facebook profiles of

other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

25.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For

example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

32.    Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

33.    Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

34.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be

9

evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook

account activity can show how and when the account was accessed or used.  For example, as

described herein, Meta logs the Internet Protocol (IP) addresses from which users access their

accounts along with the time and date.  By determining the physical location associated with the

logged IP addresses, investigators can understand the chronological and geographic context of

the account access and use relating to the crime under investigation.  Such information allows

investigators to understand the geographic and chronological context of Facebook access, use,

and events relating to the crime under investigation.  Additionally, location information retained

by Meta may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook

account activity may provide relevant insight into the Facebook account owner's state of mind as

it relates to the offense under investigation.  For example, information on the Facebook account

may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort

to conceal evidence from law enforcement).

35.     Therefore, the servers of Meta are likely to contain all the material described

above, including stored electronic communications and information concerning subscribers and

their use of Facebook, such as account access information, transaction information, and other

account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

to require Meta to disclose to the government copies of the records and other information

(including the content of communications) particularly described in Section I of Attachment B.

Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

37.     Based on the forgoing, there is probable cause to believe HILL's Facebook account was used to facilitate the captioned carjackings and evidence would be retained in the Facebook account and I request that the Court issue the proposed search warrant.

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrant.  Because the warrants will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39.     This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

11

Respectfully submitted,


*/s/ Adam Cook* .
Adam Cook
Special Agent
Federal Bureau of Investigation



Subscribed and sworn to before me
on March _21_, 2024 at 12:59 p.m.



/s/ Richard A. Lloret
HONORABLE RICHARD A. LLORET
United States Magistrate Judge

12

## <u>ATTACHMENT A</u>

### Property to Be Searched

This warrant applies to information associated with the following Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, CA.  The identification numbers for the Facebook account is:

> a.  Facebook identification number 100094100089167, and/or account name "Mhizz Hill," believed to be used by Matthew HILL ("SUBJECT ACCOUNT).

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from 8/1/2023 to 10/1/2023.

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from 8/1/2023 to 10/1/2023, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

2

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from 8/1/2023 to 10/1/2023, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked."

(j)     All information about the Facebook pages that the account is or was a "fan" of.

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from 8/1/2023 to 10/1/2023.

(m)    All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

3

(o)     The length of service (including start date) and the means and source of any

payments associated with the service (including any credit card or bank account

number);

(p)     All privacy settings and other account settings, including privacy settings for

individual Facebook posts and activities, and all records showing which Facebook

users have been blocked by the account;

(q)     All records pertaining to communications between Meta and any person regarding

the user or the user's Facebook account, including contacts with support services

and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within **14**

**days** of issuance of this warrant.

4

**II.      Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of 18 U.S.C. §§ 2119 922(g) involving Matthew HILL since August 1, 2023 including, for each username listed on Attachment A, information pertaining to the following matters:

a.      All items pertaining to the planning or commission of carjackings or shootings; the possession, procurement, distribution or storage of firearms or ammunition; and the distribution, or location of vehicles obtained through carjackings;

b.      All records pertaining to the sale of items procured during the commission of carjackings including the use of Facebook Marketplace;

c.      The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s);

d.      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the Facebook account owner;

e.      Evidence indicating the Facebook account owner's state of mind as it relates to the crimes under investigation;

f.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts; and

g.      All account information, including:

(1) Contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

5

(2) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number or digital money transfer account information);

(3) All privacy settings and other account settings;

(4) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that username, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string; and

(5) All records pertaining to communications between Meta/Instagram/Facebook and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

**<u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC</u>**
**<u>RECORDS PURSUANT TO FEDERAL RULES OF</u>**
**<u>EVIDENCE 902(11) AND 902(13)</u>**


I, _____, attest, under penalties of perjury by the laws
<i>Name</i>

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by _____
<i>Entity</i>

(hereinafter "the entity"), and my title is _____. I am qualified
<i>Title</i>

to authenticate the records attached hereto because I am familiar with how the records were

created, managed, stored, and retrieved. I state that the records attached hereto are true

duplicates of the original records in the custody of the provider. The attached records consist of

_____. I further state that:
<i>Generally describe records (pages/CDs or DVDs/megabytes)</i>


      a.     all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth by, or from information transmitted by, a person with knowledge of those matters,

they were kept in the ordinary course of the regularly conducted business activity of the entity, and they

were made by the entity as a regular practice; and

      b.     such records were generated by the entity's electronic process or system that produces an

accurate result; and

      c.     the records were copied from electronic device(s), storage medium(s), or file(s) in the

custody of the entity in a manner to ensure that they are true duplicates of the original records.

7

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                Signature